| | |
|---|---|
| District Court, Pitkin County, Colorado<br>506 E. Main Street<br>Aspen, CO 81611<br>Tel: 970-925-7635 | DATE FILED: June 9, 2017 1:41 PM<br>FILING ID: C78DBCDA4E30B<br>CASE NUMBER: 2017CV30041 |
| **Plaintiff:** UTE MESA LOT 1, LLC, a Colorado limited liability company; and LEATHEM STEARN, an individual; UTE MESA LOT 2, LLC, a Colorado limited liability company; UTE MESA 1011, LLC, a Colorado limited liability company; 999 UTE AVENUE, LLC, a Colorado limited liability company; 1011 UTE AVENUE HOMEOWNERS ASSOCIATION, a Colorado corporation.<br><br>v.<br><br>**Defendants:** PAUL J.A. VAN HESSEN, an individual; and UTE HOLDINGS, LLC, a Colorado limited liability company. | ^COURT USE ONLY^<br><br>Case Number:   17 CV 30041<br><br>Division:         Courtroom |
| *Attorneys for Defendant Ute Holdings, LLC:*<br><br>Attorney Name: Klein Coté Edwards Citron LLC<br>           Kenneth E. Citron, Atty. Reg.#: 43083<br>           Lance R Coté, Atty. Reg.#: 18194<br>Address:   101 South Mill Street, Suite 200<br>           Aspen, Colorado 81611<br>Phone Number: 970-925-8700<br>Fax Number: 970-925-3977<br>Email:   kcitron@kceclaw.com; cote@kceclaw.com<br><br>Attorney Name: Wells, Anderson & Race, LLC<br>           Mary A. Wells, Atty. Reg.#: 8522<br>           Adam P. O'Brien, Atty. Reg.#: 37854<br>Address:   1700 Broadway, Suite 1020<br>           Denver, Colorado 80207<br>Phone Number: 303-830-1212<br>Fax Number:   303-830-0898<br>Email:   mwells@warllc.com; aobrien@warllc.com | |
| **VERIFIED *EX PARTE* MOTION FOR APPOINTMENT OF RECEIVER** | |

Defendant UTE HOLDINGS, LLC, a Colorado limited liability company ("HOLDINGS"), by and through its attorneys, Klein Coté Edwards Citron LLC, hereby seeks immediate the appointment of a receiver regarding certain real property owned by one or more of

the plaintiffs herein, and states the following as its Verified *Ex Parte Motion* for Appointment of Receiver pursuant to C.R.C.P. 66:

1. In 2008, plaintiff Leathem Stearn ("STEARN") commenced development of two single-family homes at 1001 (Lot 1) and 1011 (Lot 2) Ute Avenue, Aspen, Colorado.

2. In furtherance of the development of Lot 2, STEARN, through a single-purpose entity, Chase 1011, LLC, obtained a loan from Alpine Bank ("Alpine") dated April 3, 2008 in the maximum principal amount of $9.5 million (the "Alpine Loan"). Chase 1011, LLC later changed its name to that of plaintiff Ute Mesa 1011, LLC ("MESA 1011").

3. The Alpine Loan is evidenced by a Promissory Note also dated as of April 3, 2008 ("Alpine Note"), and is secured by a Construction Deed of Trust dated as of April 3, 2008 and recorded on April 8, 2008 at Reception Number 548184 in the real property records of Pitkin County, Colorado (the "Alpine Deed of Trust," annexed hereto as **Exhibit A**). The Alpine Deed of Trust encumbers the following real property:

> All of Lots 2 and 3, together with Common Area Lot A, Common Area Lot B, Common Area Lot C, of 1001 Ute Avenue Subdivision/PUD, according to the plat thereof recorded on May 9, 2007, in Plat Book 83 at Page 95 as Reception No. 537513 of the County of Pitkin, State of Colorado

(the "Collateral").

4. MESA 1011 subsequently transferred the Collateral to plaintiff Ute Mesa Lot 2. LLC ("MESA 2") with Alpine's Consent. In connection with said transfer, on December 23, 2009, MESA 2 assumed all obligations of MESA 1011 pursuant to the Alpine Deed of Trust.

5. On March 25, 2010, defendant Paul J.A. Van Hessen ("VAN HESSEN") acquired by assignment the Alpine Note and the Alpine Deed of Trust. The assignment of the Alpine Deed of Trust to VAN HESSEN was recorded on March 25, 2010 at Reception Number 567943 in the real property records of Pitkin County, Colorado (*see* **Exhibit B**, annexed hereto).

2

6. On or about April 16, 2010, VAN HESSEN and MESA 2 modified the Alpine Loan and extended the maturity of the Alpine Note by way of a Modification of Note, Deeds of Trust, and Loan Documents recorded as Reception No. 569293 of the Pitkin County Records.

7. On or about May 1, 2010, VAN HESSEN made a loan to MESA 2, MESA 1011, and plaintiffs 999 Ute Avenue, LLC ("999") and 1011 Ute Avenue Homeowners Association ("HOA")(collectively, MESA 2, MESA 1011, 999 and HOA shall be referred to herein as "BORROWERS") in the principal amount of $6.2 million (the "Hessen 1 Loan"), which is evidenced by a Promissory Note dated as of May 1, 2010 in the maximum principal amount of $6.2 million (the "Hessen 1 Note") and secured by, among other things, a Deed of Trust dated as of May 1, 2010 and recorded on May 13, 2010 at Reception Number 569294 in the real property records of Pitkin County, Colorado (the "Hessen 1 Deed of Trust," annexed hereto as **Exhibit C**). The Hessen 1 Deed of Trust is secured by the same Collateral as the Alpine Deed of Trust.

8. On or about July 7, 2011, VAN HESSEN made another loan to BORROWERS in the principal amount of $1 million (the "Hessen 2 Loan," together with the Alpine Loan and the Hessen 1 Loan, the "Loans"), which is evidenced by a Promissory Note dated as of July 7, 2011 made by MESA 2, among others, in the maximum principal amount of $1 million (the "Hessen 2 Note," together with the Alpine Note and the Hessen 1 Note, the "Notes"), and secured by, among other things, a Deed of Trust dated and recorded as of July 7, 2011 at Reception Number 581086 in the real property records of Pitkin County, Colorado (the "Hessen 2 Deed of Trust," annexed hereto as **Exhibit D**, together with the Alpine Deed of Trust and the Hessen 1 Deed of Trust, the "Deeds of Trust"). The Hessen 2 Deed of Trust is secured by the same Collateral as the Alpine Deed of Trust and the Hessen 1 Deed of Trust.

9. BORROWERS failed to fulfill their obligations under the Notes, and on or about May 1, 2012, BORROWERS and VAN HESSEN entered into an Agreement for Modification of

3

Notes, Deeds of Trust, and Loan Documents effective as of May 1, 2012 (the "First Modification").

10. BORROWERS failed to fulfill their obligations under the Notes and the First Modification, and on or about November 1, 2012, BORROWERS and VAN HESSEN entered into a Second Agreement for Modification of Notes, Deeds of Trust, and Loan Documents (the "Second Modification").

11. BORROWERS failed to fulfill their obligations under the Notes and the First or Second Modifications, and on or about February 26, 2013, BORROWERS and VAN HESSEN entered into a Third Agreement for Modification of Notes, Deeds of Trust, and Loan Documents (the "Third Modification").

12. BORROWERS failed to fulfill their obligations under the Notes and the First through Third Modifications, and on or about April 1, 2013, BORROWERS and VAN HESSEN entered into a Fourth Agreement for Modification of Notes, Deeds of Trust, and Loan Documents (the "Fourth Modification").

13. BORROWERS failed to fulfill their obligations under the Notes and the First through Fourth Modifications, and on or about October 1, 2014, BORROWERS and VAN HESSEN entered into a Fifth Agreement for Modification of Notes, Deeds of Trust, and Loan Documents (the "Fifth Modification").

14. BORROWERS failed to fulfill their obligations under the Notes and the First through Fifth Modifications, and on or about December 31, 2014, BORROWERS and VAN HESSEN entered into a Sixth Agreement for Modification of Notes, Deeds of Trust, and Loan Documents (the "Sixth Modification").

15. BORROWERS failed to fulfill their obligations under the Notes and the First through Sixth Modifications, and on or about February 6, 2015 (mistakenly dated February 6,

2014), BORROWERS and VAN HESSEN entered into a Seventh Agreement for Modification of Notes, Deeds of Trust, and Loan Documents (the "Seventh Modification").

16. BORROWERS failed to fulfill their obligations under the Notes and the First through Seventh Modifications, and BORROWERS and VAN HESSEN entered into a Forbearance and Loan Modification Agreement (the "Forbearance Agreement," annexed hereto as **Exhibit E**) on or about November 24, 2015 and amended on December 15, 2015.

17. The Forbearance Agreement provides in relevant part that the Notes and Deeds of Trust (collectively, the "Loan Documents")

> are unmodified and shall remain in full force and effect . . . [and that] [n]othing in this Agreement shall in any manner prejudice, impair or act as a release or relinquishment of, any of the Loan Documents or any rights of Lender under the Loan Documents, or any lien, security interest or assignment granted and/or held by Lender in connection with the Loan. The execution of this Agreement by Lender does not constitute a waiver, limitation or modification of any of Lender's rights or remedies under the Loan Documents or applicable law, all of which Lender hereby expressly reserves. . .

18. In connection with the Forbearance Agreement, BORROWERS and VAN HESSEN also entered into a Deed-in-Lieu Agreement dated November 24, 2015 (the "DIL Agreement," annexed hereto as **Exhibit F**). The DIL Agreement provides that the Loan Documents all would remain in full force and effect after the transactions contemplated by the Forbearance Agreement were consummated, and that VAN HESSEN'S interests in the Collateral created by the conveyances provided for in the Forbearance Agreement would not merge with his interest in the Collateral provided for under the Loan Documents.

19. In addition to the Collateral, MESA 1011 and MESA 2 each gave VAN HESSEN security for the Loans as follows (the "Additional Collateral"):

> The property as described herein, chattels and intangible personalty that may or might now or hereafter be deemed to be personal property, fixtures or property other than real estate.

5

> The following legally described property located in the County of Pitkin, State of Colorado:
> All of LOT 2 of 1001 UTE AVENUE SUBDIVISION/PUD, according to the plat thereof recorded on May 9, 2007, in Plat Book 83 at Page 95 as Reception No. 537513 of the County of Pitkin, State of Colorado, known as 1011 Ute Avenue, Aspen, Colorado 81611
> together with all its appurtenances (the "Property").

20. The security interest in the Additional Collateral was filed via UCC Financing Statements with the Colorado Secretary of State on December 7, 2015 at Validation Numbers 20152110563 and 20152110570 and with the Pitkin County Clerk and Recorder on December 8, 2015 at Reception Numbers 625391 and 625390 (the "UCC-1s," annexed hereto as **Exhibit G**).

21. The Property described in the UCC-1s is now owned by MESA 2, which holds possession of same.

22. BORROWERS failed to fulfill their obligations under the Forbearance Agreement and the DIL Agreement, and BORROWERS and VAN HESSEN entered into an Amendment to Forbearance and Loan Modification Agreement and Deed-In-Lieu Agreement dated April 5, 2016 and effective as of April 1, 2016 (the "April 2016 Amendment"), extending the forbearance period agreed to by VAN HESSEN and imposing certain additional obligations upon BORROWERS.

23. The April 2016 Amendment did not change, alter or amend VAN HESSEN'S substantive rights under the DIL Agreement in the event of a breach of that agreement.

24. BORROWERS breached the Forbearance and DIL Agreements, as amended, and failed to cure such breach(es) to the extent permitted thereunder.

25. On February 24, 2017, VAN HESSEN designated HOLDINGS to accede to the benefits of the DIL Agreement and assigned to HOLDINGS the Deeds of Trust encumbering the Property (*see* **Exhibit H**, annexed hereto).

26. On February 24, 2017, as provided for the DIL Agreement, HOLDINGS recorded a Special Warranty Deed (in lieu of foreclosure)(the "DIL") and an accompanying Affidavit at Reception Numbers 636373 and 636374 in the real property records of Pitkin County, Colorado.

27. On May 3, 2017, HOLDINGS served STEARN and MESA 2 with a demand for Possession of Lot 2.

28. On May 5, 2017, Plaintiffs filed the instant action, claiming that HOLDINGS does not hold title to Lot 2 and seeking an adjudication of the parties' rights with respect thereto, pursuant to C.R.C.P. 105.

29. HOLDINGS disagrees with Plaintiffs' legal position and has filed a Motion to Dismiss the claims against HOLDINGS pursuant to C.R.C.P. 12(b)(5).

30. Even if Plaintiffs' complaint has any legal or factual merit pursuant to C.R.C.P. 105, since the Loan Documents remain in full force and effect HOLDINGS has the authority and right to foreclose upon the Collateral, which it shall do shortly by filing its Notice of Election and Demand for Sale with the Public Trustee of Pitkin County. Additionally, HOLDINGS will shortly file an action to enforce the Notes, to enforce STEARN'S guaranties of BORROWERS' payment and performance under the Loan Documents, and to foreclose on the Additional Collateral.

31. The Alpine Deed of Trust, provides, in relevant part, that upon the occurrence of any event of default:

> Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount . . . receiver may be

7

>appointed by a court of competent jurisdiction upon ex parte application and without notice, notice being expressly waived.

32. The Hessen 1 Deed of Trust and the Hessen 2 Deed of Trust both provide, in relevant part, that:

>Lender... shall be entitled to a receiver for the Property after Acceleration under § 18 (Acceleration; Foreclosure; Other Remedies), and shall also be so entitled during the time covered by foreclosure proceedings and the period of redemption, if any; and shall be entitled thereto as a matter of right without regard to the solvency or insolvency of Borrower or of the then owner of the Property, and without regard to the value thereof. Such receiver may be appointed by any Court of competent jurisdiction upon ex parte application and without notice; notice being hereby expressly waived.
>
>Upon Acceleration under § 18 (Acceleration; Foreclosure; Other Remedies) or abandonment of the Property, Lender, in person, by agent or by judicially-appointed receiver, shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. All rents collected by Lender or the receiver shall be applied, first to payment of the costs of preservation and management of the Property, second to payments due upon prior liens, and then to the sums secured by this Deed of Trust. Lender and the receiver shall be liable to account only for those rents actually received.

33. Moreover, pursuant to C.R.C.P. 66(a)(1) and related case law, a receiver may be appointed by the court before judgment, provisionally, on application of either party, when the party establishes a prima facie right to the property, or to an interest therein, which is the subject of the action and is in possession of an adverse party and such property, or its rents, issues, and profits are in danger of being lost, removed beyond the jurisdiction of the court, or materially injured or impaired.

34. The Collateral and the Additional Collateral are all of the collateral that secures the Loans.

35. The Loan Documents are now in default by, among other reasons, the failure of the BORROWERS, after notice from VAN HESSEN, to pay amounts called for by the Notes and secured by the Deeds of Trust. The Notes are now due and payable in full.

36. The Collateral and the improvements thereon and the Additional Collateral were developed, constructed and purchased as "spec" property intended for investment and resale.

37. Upon information and belief, STEARN, the principal member of each of the Plaintiff entities, is residing in the Lot 2 house without paying rent.

38. Upon information and belief, the makers of the Loan Documents have not nor attempted to rent or sell the Collateral in accordance with market prices for similar properties in the Aspen, Colorado area, resulting in their inability to repay HOLDINGS the amounts due and owing under the Loan Documents and creating waste.

39. HOLDINGS' rights with respect to the Collateral and the Additional Collateral and the actual or prospective revenue generated by same are subject to the risk of imminent harm and irreparable injury, loss and damage since, inter alia, the Collateral does not presently generate any revenues to fully pay operating expenses and the payments due under the Loan Documents and is grounds for the appointment of a receiver pursuant to C.R.C.P. 66(a)(1).

40. To avoid further waste, possession and control of the Collateral and the Additional Collateral should be delivered to an independent receiver who has the powers and authority set forth in the proposed form of Order Appointment Receiver, filed contemporaneously herewith.

41. Cordes & Company is experienced in dealing with issues involved in managing and operating commercial property and is qualified to act as receiver in this case. Additional information regarding Cordes & Company is attached hereto as **Exhibit I**.

42. HOLDINGS requests that this Court enter an *ex parte* Order appointing Cordes & Company as receiver (the "Receiver") for the Collateral and Additional Collateral, with all of the

powers and authority usually held by receivers and reasonably necessary to accomplish the purposes set forth herein including, but not limited to, the following powers:

    a.    To take from Plaintiffs, and all persons in active concert and participation with them, immediate control of the Collateral and Additional Collateral, wherever it may be found, to the exclusion of the Plaintiffs, and all persons acting in active concert and participation with it, including representatives, employees, agents, attorneys, managers, partners, accountants and banks;

    b.    To enter into any of Plaintiffs' premises where any of the Collateral or Additional Collateral may be, and search for, take possession of, remove, keep and store any of the Collateral and Additional Collateral until the same has been sold or otherwise disposed of;

    c.    To hire and retain such legal counsel and accounting and other professionals as the Receiver may deem necessary to the proper discharge of the Receiver's duties, with all reasonable expenses incurred in connection therewith deemed to be expenses of the Receivership without further order of the Court (and to pay such professionals from the rents, revenues, and proceeds of the Collateral without further application to or order of the Court);

    d.    To take charge of the Collateral and the Additional Collateral, and all assets and personal property used or associated therewith, regardless of where such property is located, including but not limited to: (1) all keys; (2) all leases and communication and correspondence and other files relating thereto; (3) bank accounts, checks, notes, security deposits, certificates, books, records, contracts and claims; (4) all deposits, rents, revenues, income, rental payments, leases payments, rent rolls, accounts receivable and payable and records relating thereto, and any other accounting information; (5) all contracts, claims, including but not limited to claims against third parties; (6) all leases, files, furniture, fixtures, appliances, equipment, supplies, blueprints, building permits, property entitlements, soil reports, engineering reports, inspection reports; (7) memberships, membership interests, membership accounts, prepaid memberships, any other sums relating to the use, enjoyment, possession, improvement or occupancy of all or any part of the Collateral, and any accounts, records or descriptions of any of the foregoing; (8) any and all contracts, bids or other materials relating to any contractor work at the Property; (11) any and all intellectual property used in or related to the Collateral; (12) any and all minutes of entity meetings of the Plaintiffs and any and all minutes of any membership meetings; and (13) such other records pertaining to the management of the Collateral and the Additional Collateral. With

respect to any records or information existing in computer memory or other electronic medium such information shall be deemed to include the medium on which such information is stored and appropriate software and hardware to access such information;

e.  To manage, operate, maintain and otherwise control the Collateral and Additional Collateral as necessary to prevent diminution of the value of the Collateral and Additional Collateral;

f.  To use the personnel of Receiver or to hire on a contract basis personnel necessary to maintain and preserve the Collateral and Additional Collateral and, with prior approval of Lender, to retain, hire and terminate property management personnel and other personnel, and contract for and obtain such services, utilities, supplies, equipment and goods as are reasonably necessary to operate, preserve and protect the Collateral and Additional Collateral or to liquidate the Collateral and Additional Collateral and to make such repairs to the grounds and improvement on the Collateral and Additional Collateral, all as the Receiver may reasonably deem necessary;

g.  To open, transfer and change all bank accounts and trade accounts and deposit all sums received by the Receiver in a financial institution insured by the federal government in the name of the Receiver and to write checks and make withdrawals on such accounts;

h.  To collect receivables and claims arising from the Collateral and Additional Collateral;

i.  To perform ordinary and necessary repairs and maintenance on any Collateral and Additional Collateral, including deferred maintenance during the term of the Receivership and to enter into necessary contracts for such maintenance, provided however, that for any single expense greater than $5,000.00, the Receiver shall obtain Lender's prior approval;

j.  With HOLDINGS' prior approval, to pay taxes, insurance, utility charges and other expenses and costs reasonably incurred in managing, preserving, protecting and liquidating the Collateral;

k.  With prior approval of this Court upon ten (10) days' notice to all parties of record in this case (such approval to be deemed granted without further Court order if, within such ten-day period, no notice of objection is filed with the Court and served on all parties having entered an appearance in this action) to enter into,

11

enforce, ratify, modify, and negotiate such leases, contracts or other agreements relating to the operation and management of the Collateral and Additional Collateral and to terminate such leases, contracts, or other agreements;

l.  To obtain and renew all insurance policies that the Receiver deems necessary for the protection of the Collateral and Additional Collateral and for the protection of the interest of the Receiver and the parties to this action with respect to the Collateral and Additional Collateral and to notify any and all insurers under any insurance policies affecting the Collateral and Additional Collateral of the pendency of these proceedings, and that any proceeds paid under any such insurance policies shall be paid to the Receiver until such time as the said insurance carriers are advised to the contrary by this Court or until they receive a certificate issued by the Clerk of this Court evidencing dismissal of this action;

m.  To apply for, obtain, renew and, as necessary, to prevent the loss of all necessary licenses, permits, trademarks, copyrights, patents, licenses, permits and entitlements required for the preservation or operation of the Collateral and Additional Collateral or issued in connection with therewith;

n.  To account to this Court for all sums received and expenditures made and file monthly reports with the Court and serve a copy of such monthly report on any person having entered an appearance in this action;

o.  To issue Receiver's Certificates for the purpose of preserving and maintaining the Collateral and Additional Collateral and payment of essential expenses, without further approval of this Court, but with the prior written approval of HOLDINGS, in exchange for funds advanced by Lender or by third parties, which Receiver's Certificates shall bear interest and which Receiver's Certificates shall be a lien and security interest of HOLDINGS and a preference claim upon the Collateral, provided however, no Receiver Certificate shall be issued that may have a lien and/or security interest prior to that of HOLDINGS under the Loan Documents without providing Lender with notice of the same and an opportunity to object, and in the event funds are advanced by HOLDINGS, shall be added to the outstanding indebtedness due under the Note;

p.  With prior approval of the Court upon ten (10) days' notice to all parties having entered an appearance in this case (such approval to be deemed granted without further Court order if within such ten-day period no notice of objection is filed with the Court and served on all parties having entered an appearance in this action) to file and maintain legal proceedings to protect the Collateral and Additional Collateral, pursue claims relating to the operation of the Collateral and

Additional Collateral and enforcement of this Court's Order Appointing Receiver and, if the Receiver so elects in its sole discretion, be added or substituted in any legal proceedings already commenced which affect the Collateral and Additional Collateral, provided, however, if the need to file or maintain legal proceedings arises under exigent circumstances, notice shall be given only as required by the Court and the request to determine the appropriate notice may be made by the Receiver *ex parte;*

q. Apply the rents, revenues, income, issues and profits collected by the Receiver in connection with the management and operation of the Collateral and Additional Collateral: *first*, to the Receiver's compensation as ordered below; *second*, to the other costs and expenses of the receivership, including any management fees, attorney fees and other out-of pocket expenses incurred by the Receiver in connection with the receivership; *third*, to the costs of operating, maintaining and repairing the Collateral and Additional Collateral; *fourth*, to payment of expenses of the Collateral, including but not limited to payment of real and personal property taxes, insurance, water and sanitation bills and operating expenses; *fifth*, to repay all sums borrowed by the Receiver as evidenced by Receiver's Certificates; *sixth*, whenever sufficient funds are available for such purpose, the Receiver shall make principal and interest payments toward any loans which are secured by a lien on the Property, in the order of their priority, or, in the event that Ute Holdings, LLC is determined to be hold title to the Property, to make payments directly to Ute Holdings, LLC as owner; and *seventh*, to a fund to be held by the Receiver in an interest-bearing account, pending further order of this Court;

r. On a monthly basis, to pay itself as compensation for its services as Receiver at the hourly rates of Receiver principals and personnel set forth in **Exhibit J** hereto and incorporated herein by reference, and to reimburse itself for customary expenses incurred;

s. Upon further Court order and with the consent of Lender, to advertise the Collateral and Additional Collateral for lease and to rent the Collateral and Additional Collateral, or any part of it; and

t. To do and perform such acts as provided in the proposed Order Appointing Receiver submitted to the Court for approval contemporaneously with the filing of this Motion.

u. Generally to do such other lawful acts as the Receiver reasonably deems necessary to the effective operation and management of the Collateral and Additional Collateral, and to perform such other functions and duties as may from

13

time to time be required and authorized by this Court, by the laws of the State of Colorado or by the laws of the United States of America.

WHEREFORE, Ute Holdings, LLC requests that this Court enter an Order in the form of the proposed Order Appointing Receiver submitted to the Court with this Motion appointing Cordes & Company to take possession and control of the Collateral and Additional Collateral, to collect any rents, income and revenues from the Collateral and Additional Collateral, to maintain and protect the Collateral and Additional Collateral, and to take such other action as is set forth in the Order Appointing Receiver, and that the Court grant such other and further relief as it deems proper.

Respectfully submitted this 9th day of June, 2017.

KLEIN COTÉ EDWARDS CITRON LLC

By: /s/ *original signature on file*
Kenneth E. Citron

WELLS, ANDERSON & RACE, LLC

By: /s/ *original signature on file*
Adam P. O'Brien

## VERIFICATION

STATE OF ILLINOIS      )
                       )ss.
COUNTY OF Cook         )

Arie Zoller, being duly sworn, deposes and states that he is the authorized agent for Ute Holdings, LLC and that he has read the foregoing VERIFIED *EX PARTE* MOTION FOR APPOINTMENT OF A RECEIVER, and that the information contained therein is true and accurate to the best of his knowledge, information and belief.

_____
Arie Zoller

Subscribed and sworn to before me by Arie Zoller on the 9 day of June, 2017.

WITNESS MY HAND AND OFFICIAL SEAL.
My commission expires: _____

Dated this 9th day of June, 2017.

_____
Notary Public

```
OFFICIAL SEAL
PATRICIA A SCHULZ
Notary Public - State of Illinois
My Commission Expires Aug 18, 2017
```

15